# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**TINA C. GOSEY,**

                        Plaintiff,

      **v.**

                                                 **Case No. 11-C-805**

**AURORA MEDICAL CENTER,**

                        Defendant.

---

## DECISION AND ORDER

---

Plaintiff Tina C. Gosey ("Gosey"), an African-American female, filed this employment discrimination and retaliation action against her former employer, Aurora Medical Center-Kenosha ("Aurora"). Gosey alleges that Aurora violated Title VII of the Civil Rights Act as amended ("Title VII"), 42 U.S.C. § 2000e, by not selecting her for a food manager position, subjecting her to harassment by key employees, and retaliating against her by terminating her employment. Gosey filed her action without counsel; however, she has been represented by counsel since February 24, 2012, when counsel filed a notice of appearance. (*See* ECF No. 15.) This Decision and Order addresses Gosey's motion to supplement (ECF No. 52) and Aurora's motion for summary judgment (ECF No. 27.)

### MOTION TO SUPPLEMENT

Before addressing the summary judgment motion, the Court considers Gosey's April 29, 2013, motion to supplement her brief by filing proposed findings of fact,

which is supported by an affidavit of counsel.  (ECF No. 52-1.)  Aurora opposes the motion.  (ECF Nos. 53 & 54.)

Counsel for Gosey avers that although he is requesting permission to file the proposed findings of fact in late April, Aurora saw the proposed findings in January — without citations to factual materials because the declarations had not been completed at that time.  He also apologizes for not filing Gosey's proposed findings when she filed her opposing brief, stating that at the time he filed Gosey's brief, he was preparing to take a 10-day vacation and he "could not get around to both at the same time."

On March 27, 2013, Gosey responded to Aurora's motion for summary judgment but filed no proposed findings of fact.  (ECF Nos. 41 & 42.)  Civil Local Rule 56(b)(2) (E.D. Wis.) provides:

> Each party opposing a motion for summary judgment **must file within 30 days of service of the motion and the materials required by subsection (b)(1)**, above:
>
> (A) a memorandum of law;
>
> (B) a concise response to the moving party's statement of facts that must contain:
>
> (i) a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon, and
>
> (ii) **a statement, consisting of short numbered paragraphs, of any additional facts that require the**

**denial of summary judgment, including references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in that paragraph**. A non-moving party may not file more than 100 separately-numbered statements of additional facts;

(C) any opposing affidavits, declarations, and other materials referred to in Fed. R. Civ. P. 56(c).

(Emphasis added.)

The Court notes that Gosey did file a number of motions for extension of time — which were granted. In July and November 2012, she obtained extensions of the deadlines discovery and for filing dispositive motions. (*See* July 10, 2012, Text only order; ECF No. 6.) On February 19, 2013, this Court granted Gosey's request for 30 additional days to file her response to Aurora's summary judgment motion. (ECF No. 38.) Gosey filed her response to the summary judgment motion on March 27, 2013, **36** days after February 19, 2013. When filing her materials in opposition to Aurora's summary judgment motion, Gosey did not request additional time to file her proposed findings or give any indication that she intended to supplement her opposition filing. On April 10, 2013, Aurora filed its reply to Gosey's response to its proposed findings of fact, its reply brief, and an affidavit.

On April 29, 2013, 19 days after Aurora filed its replies in support of its motion for summary judgment, Gosey filed her request for permission to file proposed findings of fact.

The record clearly reflects Gosey's knowledge of the procedure for requesting

- 3 -

extensions of time.  In this instance, Gosey did not make a timely request for additional time to file her proposed findings of fact.  She also has not established a sufficient reason for the belated filing of those proposed findings.

Furthermore, if allowed, the belated filing would require that Aurora supplement its reply materials and incur additional attorney's fees in defense of the action.  Under these circumstances, Gosey's motion for leave to file proposed findings of fact is denied.  *See Schmidt v. Eagle Waste & Recycling, Inc.,* 599 F.3d 626, 630-31 (7th Cir. 2010).

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Summary judgment should be granted when a party that has had ample time for discovery fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.*  If the moving party establishes the absence of a genuine issue of material fact, the non-moving party must demonstrate that there is a genuine dispute over the material facts of the case.  *Id.* at 323-24.  "In determining whether a genuine issue of material fact exists, all facts are construed in favor of the nonmoving party."  *Springer v. Durflinger,* 518 F.3d 479, 483-84 (7th Cir. 2008).

- 4 -

## RELEVANT FACTS[1]

### General Background

Aurora is a healthcare provider with its principal place of business in Kenosha, Wisconsin. Aurora uses an electronic time and attendance recording system, known as Kronos, to record the hours worked by employees. By means of uniquely coded identification/badges, Kronos captures the precise time that each employee swipes in and out of work. Gosey was required to clock in and out of the Kronos system each day she worked. She worked for Aurora as a chef assistant from February 3, 2008, until October 19, 2010, when Aurora terminated her employment based on her absenteeism — specifically, her tardiness.

Gosey's principal duties, as a cook and subsequently as a chef assistant, included preparing food and planning meals at Aurora. Gosey was the sole first shift chef assistant.

---

[1] The relevant facts are based on the parties' stipulated facts (ECF No. 29) and Aurora's proposed findings of fact ("PFOF") (ECF No. 30) to the extent they are undisputed. Gosey's response to Aurora's PFOF skips paragraph 54, 57 through 60, 73, 74, and 76. Therefore, those paragraphs are deemed admitted. *See* Civ. L.R. 56(b)(4).

A denial or statement that a proposed finding is not true or is false with respect to a properly supported proposed finding of fact does not give rise to a factual dispute. (*See e.g.* Pl.'s Resp. Def.'s PFOF ¶¶ 5, 38, 68-72.) (ECF No. 41.) Portions of Gosey's Declaration including parts of paragraphs 24 through 27 are conclusory and address matters for which Gosey lacks personal knowledge and, therefore, are insufficient to raise a factual dispute. *See Johnson v. Nordstrom, Inc.,* 260 F.3d 727, 736 (7th Cir. 2001). Citation to an entire declaration or no citation are also insufficient to create a factual dispute. (Pl.'s Resp. Def.'s PFOF ¶¶ 15, 30, 52, 53, 68-70, 75.) Citations to all quoted documents are provided, regardless of whether they are undisputed.

Case 2:11-cv-00805-PP   Filed 09/26/13   Page 5 of 29   Document 55

**Application for Food and Nutrition Service Position**

During September 2009, Aurora posted an opening for a manager of food and nutrition services. The job qualifications included five to seven years of progressively responsible experience managing a food service operation; the ability to analyze and interpret financial data; effective time management skills; and experience managing staff, budgets, and multiple human resources functions at the manager level. (Declaration of Katherine Gibson ("Gibson"), formerly known as Katherine Osantowski ("Osantowski"), ¶ 2, Ex. A.) (ECF Nos. 34, 34-1.) Aurora received over 150 applications for the position, including one from Gosey.

Gosey filed an application for the position and her resume on September 10, 2009. As reflected by her resume, Gosey had less than five years of management experience: she had managed her own catering business for three years and managed the day to day operations of Aurora's food service department from March 2008 to August 2008. (Gosey Decl. ¶ 3.) (ECF No. 42.)

On November 6, 2009, Osantowski, an Aurora human resources generalist, and Debra Franckowiak ("Franckowiak"), director of clinical and support services, interviewed Gosey for the open managerial position. Both Osantowski and Franckowiak are Caucasian. They decided not to hire Gosey.

On the day of the interview, Franckowiak prepared an interview evaluation of Gosey stating:

> I have significant concerns about [Gosey's] ability to

accomplish tasks in her present role. I also have concerns about [her] inability to partner with staff that she doesn't like. [Gosey] does not have an understanding of finances which ties directly into operational issues. Lastly, [Gosey] doesn't presently model behavior that would be expected of staff (arrives late for work and leaves during the day).

(Franckowiak Decl. ¶ 7; Ex. A.) (ECF Nos. 33, 33-1.) Franckowiak also stated that while Gosey's qualifications were "not a good fit" for the position, Franckowiak would "use the interview to coach/mentor [Gosey] so she can acquire some new skills that will help her in seeking other leadership opportunities." (*Id*.) Franckowiak followed through on her plan by nominating Gosey for Aurora's Leadership Academy. (*Id.* at ¶ 8.)

On November 6, 2009, Osantowski also prepared an evaluation of the Gosey interview noting that Gosey appeared to have difficulty with taking ownership for her actions and that she displayed negative feelings toward her co-workers. Osantowski recommended that Gosey's application be held noting that she "meets qualifications but have stronger candidates." (Gibson Decl. ¶ 5-6, Ex. C.)

After Gosey's interview, Aurora continued to search for a qualified candidate who had significant management experience. On December 30, 2009, Margaret Muske ("Muske") applied for the open position and submitted a resume detailing her 19-year career which included progressively responsible roles in managing food service operations, including experience as a catering events manager, dining room manager, food service manager, director of food service, and food service supervisor.

- 7 -

Muske also had six years of experience working for two separate healthcare facilities. In her prior position Muske had managed over 100 employees and was responsible for budgeting, cost control, payroll, and general accounting.

On January 25, 2010, Franckowiak and Osantowski interviewed Muske for the open position. In her January 26, 2010, evaluation of the Muske interview,[2] Franckowiak stated that Muske had "excellent examples, very enthusiastic, understands performance improvement activities." (Franckowiak Decl. ¶ 12; Ex. B.) (ECF No. 33-2.) Franckowiak recommended that Muske be "moved to the next step of the interviewing process." (*Id*.)

On January 26, 2010, Osantowski prepared an evaluation of her interview with Muske indicating that Muske "ha[d] previous exp[erience] in management and culinary work. Good examples of dealing w/difficult employees and building a team. Has managed 25-125 employees and provided many examples of process improvement w/in departments. Government and healthcare exp. Good interview." (Gibson Decl. ¶11, Ex. E.) (ECF No. 34-5.) Osantowski recommended that Muske be "moved to the next step of the interviewing process."

After her interview with Franckowiak and Osantowski, Muske was interviewed by a panel of individuals. Aurora hired Muske for the position, and Muske became Gosey's direct supervisor on March 22, 2010. Muske continues to be employed by

---

[2] This finding is based on paragraph 27 of Aurora's PFOF. However, the proposed finding erroneously refers to the interview as "Plaintiff's." The Court has corrected the error.

Aurora in that position.

**Gosey's Discipline History**

From June 2008 until June 2010, Kurt Seebacher ("Seebacher"), who is Caucasian, was the regional manager of food and nutrition services for several Aurora facilities, including the Kenosha facility. Seebacher directly supervised Gosey between January 2010 and March 2010. Gosey was assigned to work first shift as chef assistant. The first shift chef assistant was responsible for planning the next day's meals and filling out daily prep sheets which detailed tasks to be performed by the first shift prep cook. Seebacher directed Gosey to fill out prep sheets each day because without them the prep cook would have to guess when choosing tasks to perform, which would be unproductive. On several occasions Gosey did not fill out the daily prep sheets.

Seebacher also supervised the second shift chef assistant, Nicholas Sandoval ("Sandoval"), who is Hispanic. The second shift assistant did not need to fill out prep sheets because no prep cook was assigned to the second shift.

Seebacher directed Gosey to hold the Aurora culinary staff accountable for working their scheduled hours and to inform him in advance of any schedule changes. Gosey did not communicate with Seebacher regarding schedule changes, resulting in unjustified overtime and extra hours for Aurora culinary staff.

On February 3, 11, and 22, 2010, Seebacher issued employee disciplinary notices to Gosey for failing to follow his directions. Seebacher's February 3, 2010,

- 9 -

discipline of Gosey set forth his expectations that she (1) communicate all changes to the culinary staff hours and the reason for the changes to Seebacher for his approval; (2) complete the prep sheet for the prep cook by February 8, and do so on a daily basis so that the prep cook could be held accountable for completion of all work for the next day; (3) provide support and help create a positive teamwork atmosphere in the kitchen, communicate and behave in a professional manner, promote teamwork, and serve as a role model in the department; and (4) provide Seebacher with a weekly update and summary each Friday, including action plans for process improvements in the food services department.

On February 11, 2010, Seebacher issued Gosey a second written employee disciplinary notice for failing to follow his directions. That notice set a new deadline of February 15, 2010, for Gosey to complete the prep sheets. Seebacher also noted that Gosey had not followed his directions from the February 3, 2010, disciplinary notice because she had not provided prep sheets, and that she had failed to provide leadership because she had not promoted teamwork.

On February 22, 2010, Seebacher issued Gosey a third written employee disciplinary notice because she had failed to: (1) complete the prep sheets by February 15, 2010, as directed; (2) communicate changes in the culinary staff's scheduled hours with the reason for the overtime; (3) consistently use the prep sheet and provide him copies; (4) use time management and critical thinking skills to improve flow processes; and (5) provide him with weekly updates.

As part of the February 22 disciplinary action, Seebacher gave Gosey an action plan for improvement requiring that Gosey (1) consistently use the prep sheet and critical thinking skills to improve work flow and reduce overtime, to build professional relationships with the culinary staff and to be fair in assigning tasks; (2) take responsibility for ensuring that the completed prep sheets were in his mailbox daily; and (3) fill out prep sheets daily and give them to the prep cook by 8:00 a.m., send him the weekly update on Friday, and meet project deadlines.

On March 31, 2010, Seebacher met with Gosey to follow up on the performance expectations he had set out for her in the three employee disciplinary notices. During the meeting, Gosey raised her voice to Seebacher and stated, "You are picking on me because I am black." (Seebacher Decl. ¶17). (ECF No. 32.) Seebacher asked Muske to join the meeting. Gosey continued to address Seebacher in a raised voice and accuse him of picking on her because she was black.

On March 31, 2010, Seebacher met with human resources director Kellie Nelson ("Nelson"), Gosey, and Muske.[3] During the 45-minute meeting, Seebacher reviewed Gosey's written Disciplinary Notices and explained to Gosey his vision for the culinary staff.

---

[3] There is a genuine dispute of fact regarding whether Gosey complained of racial bias during the meeting with Nelson. (*See* Def.'s Reply Pl.'s Resp. PFOF ¶ 51, referring to Gosey's Response citing Gosey Decl. ¶ 22.) Aurora correctly notes that paragraph 22 of the Gosey Declaration does not address the racial bias. However, paragraph 23 of Gosey's Declaration addresses racial bias and the Court has considered the contents of paragraph 23 despite her citation to the prior paragraph.

## Gosey's Attendance Record and Discharge

In 2010, Aurora had a written tardiness policy which stated, "Tardiness . . . is defined as logging into the KRONOS automated time and attendance system **after** the employee's scheduled start time." (Nelson Decl. ¶ 6, Ex. B.[4]).[5] (ECF Nos. 35 & 35-2.) Tardiness was tracked on an annual basis beginning with the first pay period in April. Under Aurora's tardiness policy, "excessive tardiness" for full time employees is defined as "more than 13 occurrences." (Nelson Decl. ¶ 6, Ex. B, §§ II. A & IV.) A full time employee, like Gosey, who incurred more than 13 occurrences of tardiness, or who incurred a single occurrence of ten minutes or more of tardiness, was to be counseled.

Subsequent occurrences of tardiness, after counseling, placed the employee in a four-step progressive discipline process, culminating in the termination of employment. If an employee was in a particular step of discipline due to tardiness and incurred more than one tardiness per pay period, "typically" the employee would only be given the particular step of discipline for that pay period — the employee would not be given more than one disciplinary step per pay period. (Nelson Decl. ¶

---

[4] Paragraph 55 of Aurora's PFOF erroneously cites exhibit A to the Nelson declaration.

[5] There is a genuine factual dispute regarding whether the Food Services Department had an informal policy allowing employees a seven-minute grace period. (*See* Def.'s Reply Pl.'s Resp. to PFOF ¶ 55, referring to Gosey's Response citing Gosey Declaration ¶ 29, Ex. 22 (Franckowiak Oct. 31, 2012, Dep.) 7:14-13:1) (ECF No. 42-18.) and the April 10, 2013, Declaration of Nicolas Anderson ("Anderson Decl. II"), Ex. A (Franckowiak Oct. 31, 2012, Dep.) 19:7-13.) (ECF Nos. 47, 47-1.) (ECF No. 46).) Aurora correctly notes that paragraph 29 of the Gosey Declaration does not address the grace period. However, paragraph 30 of Gosey's Declaration addresses the grace period, and the Court has considered the contents of paragraph 30 despite her citation error.

- 12 -

7.)  Supervisors usually reviewed their employees' attendance records around the time of Aurora's bi-weekly pay periods.  (*Id*.)

When Gosey was tardy, Muske "annotated" but did not alter Gosey's Kronos records to identify the days that Gosey clocked in late for work.  Muske used the same practice to track the attendance of all employees she supervised.

Between April 11, 2010, and June 18, 2010, Gosey was tardy on 14 occasions.  On July 7, 2010, Muske gave Gosey a formal counseling "Tardy Attendance Reminder Notice" dated June 25, 2010.  (Muske Decl. ¶ 11, Ex. B.) (ECF Nos. 31, 31-2.)  On July 5, 2010, Gosey swiped in to work five minutes past her scheduled start time.  Muske gave Gosey a "Step One Verbal Warning (Reduced to Writing)" dated July 26, 2010, for the July 5 tardy occurrence.  (*Id*. at ¶ 12, Ex. C.) (ECF No. 31-3.)  Both notices stated, "Please be aware that continued absence or tardiness will result in progressive discipline up to and including employment termination."  (*Id.* at ¶¶ 11-12, Exs. B & C.)

On August 5, 2010, Gosey filed an administrative complaint with the State of Wisconsin Department of Workforce Development, Equal Rights Division ("ERD"), ERD Case No. CR201002766, which was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC"), EEOC Case No. 26G201001516, alleging that because of her race Aurora denied her a promotion, Seebacher disciplined her, and Muske, Seebacher and Franckowiak altered Kronos time records so she would accumulate enough demerits to have her employment terminated.

- 13 -

Gosey received a "Step Two Written Warning" from Muske dated August 9, 2010, for a July 20 tardy occurrence.[6]  Muske gave Gosey a "Step Three Final Written Warning" dated August 25, 2010, for swiping into work 11 minutes past her scheduled start time on August 17, 2010.[7]  (Muske Decl. ¶¶ 14, 16, Exs. D, E.)

Gosey was also late on July 25, and July 27, 2010.  (Muske Decl. ¶ 15.) Muske did not issue discipline for either occurrence because they fell within the same pay period as the July 20, tardiness occurrence.  (*Id*.)

On September 1, 2010, Muske gave Gosey suggestions for being on time to work such as setting two alarm clocks, planning to leave early for work, and setting goals as a motivation for arriving at work on time.  Additionally, she recommended that Gosey participate in a self-paced on-line course — "Balancing Work and Family" — that Aurora provided to all its employees without cost.  (Muske Decl. ¶¶ 17, 18, Exs. F, G.)

On October 11, 2010, Gosey swiped in one minute past her scheduled work time.  On October 15, 2010, Gosey swiped in two minutes past her scheduled work time.  On October 19, 2010, Aurora discharged Gosey for excessive tardiness.  Aurora discharged seven employees in 2010 for absenteeism, six of whom were Caucasian.

---

[6] There is a factual dispute between the parties regarding whether Gosey was late on July 20, 2010.  (*See* Def.'s Reply Pl.'s Resp. PFOF ¶ 66.)  Aurora asserts that Gosey was 27 minutes late. Gosey maintains she was three minutes early.

[7] At pages 5 and 6 of her opposition brief, Gosey attempts to raise a dispute regarding whether she was late on August 17, 2010, citing paragraph 26 of her declaration and paragraph 16 and exhibit H to the Muske Declaration.  Muske avers that Gosey was 11 minutes late.  Gosey avers s she was four minutes early.  However, paragraph 18 of the parties' stipulated facts states that on August 17, 2010, Gosey swiped into work 11 minutes past her scheduled start time.

Muske was not aware until after Gosey had been discharged that she had filed any discrimination complaints against Aurora with the State of Wisconsin.

On October 21, 2011,[8] Gosey filed an administrative complaint with the ERD, which was cross-filed with the EEOC, alleging that Aurora had terminated her employment in retaliation because of her prior administrative discrimination complaint against Aurora.

On March 18, 2011, the ERD found no probable cause to believe that Aurora discriminated against Gosey because of her race with respect to the promotion she sought or in the terms or the conditions of her employment, and dismissed her August 2011 administrative complaint. On March 18, 2011, the ERD also found no probable cause to believe that Aurora discharged Gosey because she made a complaint under the Wisconsin Fair Employment Law, and dismissed the October 2011 complaint. On March 18, 2011, the EEOC dismissed Gosey's retaliatory discharge case and gave her notice of her right to sue within 90 days of receipt of the notice.

Gosey appealed the ERD's determination, but only as it related to her complaint filed on August 5, 2010 (ERD Case No. CR201002766). Gosey did not obtain a right to sue letter from the EEOC regarding her August 2010, complaint because the ERD had not yet held a hearing on Gosey's appeal in that case. In order to

---

[8] Paragraph 26 of the parties' stipulated proposed findings of fact states that Gosey's administrative retaliatory discharge complaint was filed in 2012. The Court has corrected the obvious typographical error. The same error appears in paragraph 73 of the PFOF and has been corrected by the Court.

- 15 -

consolidate the issues in one forum, Aurora agreed to waive the requirement that Gosey obtain a right to sue letter from the EEOC as to the issues raised in her August 2010 complaint, and Gosey agreed to withdraw her appeal to the ERD. Gosey filed this federal action on August 24, 2011.

## ANALYSIS

Aurora seeks summary judgment dismissing Gosey's action, asserting that the undisputed facts establish the following: (1) In March 2010 Aurora hired a more qualified candidate than Gosey for the manager of food and nutrition services position; (2) Aurora treated Gosey no differently than similarly situated Caucasian employees as to the terms and the conditions of her employment and discipline; and (3) Aurora discharged Gosey because she repeatedly violated its attendance policy. Aurora also maintains that Gosey's Amended Complaint fails to establish that this Court has subject matter jurisdiction over this action.

In response, Gosey filed a motion to amend her complaint to include jurisdictional allegations, (ECF No. 39), and a summary judgment opposition brief, (ECF No. 44). Gosey asserts that her proposed amended Complaint establishes the Court's jurisdiction. She also states that there are genuine disputes of material fact and that, when the evidence and the reasonable inferences from that evidence are viewed in the light most favorable to her, she has presented sufficient evidence upon which a jury could find for her on her claims.

- 16 -

**Subject Matter Jurisdiction**

Gosey's motion to amend her Complaint was granted, and the operative Complaint in this action adequately alleges federal question jurisdiction over this action because Gosey's claim arises under Title VII of the United States Code. (ECF Nos. 49 & 50.) Therefore, this action is not subject to dismissal for lack of subject matter jurisdiction.

**Failure to Promote**

Under Title VII, employers may not "fail or refuse to hire or to discharge any individual, or otherwise [ ] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e−2(a)(1).

To withstand summary judgment, Gosey must put forth evidence that she suffered an adverse employment action as well as evidence that the action was the product of discrimination based on her race. There are two ways to establish discrimination.

Under the "direct method," Gosey must "point to enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue." *Egonmwan v. Cook Cnty. Sheriffs Dep't*, 602 F.3d 845, 849 (7th Cir. 2010). Alternatively, under the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), she must establish a *prima facie* case of discrimination and show that Aurora's proffered "legitimate, nondiscriminatory

- 17 -

reasons for their actions . . . were pretextual." *Egonmwan*, 602 F.3d at 850. Gosey does not identify the method(s) on which she relies. However, the Court will analyze her claim under both methods of proof.

In order to survive summary judgment under the direct method, Gosey must present direct or circumstantial evidence showing "that the decisionmaker acted because of the prohibited animus." *Venturelli v. ARC Cmty. Servs., Inc.,* 350 F.3d 592, 601 (7th Cir. 2003). Direct evidence "essentially requires an admission by the decision-maker that [her] actions were based on the prohibited animus," *id.* at 599, and is "rarely found." *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 616 (7th Cir. 2000).

A plaintiff more commonly satisfies the direct method by piecing together a "convincing mosaic" of circumstantial evidence pointing to a discriminatory reason for the employer's action. *Winsley v. Cook Cnty.,* 563 F.3d 598, 604 (7th Cir. 2009). Circumstantial evidence may include:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence that similarly situated employees outside the protected class received systematically better treatment; or (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class, and the employer's reason is a pretext for discrimination.

*Good v. Univ. of Chi. Med. Ctr.,* 673 F.3d 670, 675 (7th Cir. 2012) (quoting *Darchak v. City of Chi. Bd. of Educ.,* 580 F.3d 622, 631 (7th Cir. 2009)).

Aurora takes the position that Gosey's three years of managerial experience

- 18 -

were insufficient to qualify her for the position. Gosey asserts that she was more qualified for the position than Muske, arguing that her degree in culinary arts alone matched Muske's management experience in food service. In so contending, Gosey does not acknowledge the undisputed fact that the job posting required five to seven years of progressively responsible experience managing a food service operation. Gosey concedes that her three years of managerial experience prior to working for Aurora, and six months of such experience acquired between March and August of 2008, do not equal the required experience. Despite viewing the evidence and the inferences from that evidence in the light most favorable to Gosey, she has not presented sufficient evidence upon which a reasonable jury could conclude that she was qualified for the food and nutrition services manager position.

With respect to whether Gosey has made a sufficient showing of discrimination under the indirect method, Gosey must first establish a *prima facie* case of discrimination by showing that (1) she was a member of a protected class; (2) she applied and was qualified for the position she sought; (3) she was rejected for the position; and (4) the position was given to a person outside the protected class who was similarly or less qualified. *See Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). If Gosey establishes a *prima facie* case, the burden shifts to Aurora to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *South v. Ill. Envtl. Prot. Agency,* 495 F.3d 747, 751 (7th Cir. 2007). If Aurora can do so, the ultimate burden shifts back to Gosey to show that Aurora's purported

- 19 -

reason for not promoting her was pretextual.  *Id*

"Once the plaintiff establishes this prima facie case, there is a presumption of discrimination that obligates the employer to produce a legitimate nondiscriminatory reason for its decision."  *Debs v. NE Ill. Univ.,* 153 F.3d 390, 395 (7th Cir. 1998). Aurora contends that it had a legitimate, non-discriminatory reason for not selecting Gosey for the managerial position: she did not have sufficient experience.  "Once the explanation is given, the presumption falls away and the judge has to decide whether there is enough evidence of unlawful conduct to entitle the plaintiff to a trial."  *Simple v. Walgreen Co.,* 511 F.3d 668, 671 (7th Cir. 2007).  To proceed to trial, Gosey must offer some evidence "that this proffered explanation is pretextual."  *Fischer v. Avanade, Inc.,* 519 F.3d 393, 403 (7th Cir. 2008).  To do so, she "must show that (1) the employer's nondiscriminatory reason was dishonest; and (2) the employer's true reason was based on a discriminatory intent."  *Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 683 (7th Cir. 2007) (internal citation, quotation, and alteration omitted).

Aurora asserts that Gosey cannot establish the second and fourth elements of a *prima facie* case under the indirect method of proof: that she was qualified for the position and that Muske was similarly or less qualified.  Gosey argues that Aurora's failure to allow her to move to the second stage of interviews and its ultimate hiring of Muske, who was less qualified, can only be the result of bias or prejudice based on the color of Gosey's skin.  Despite viewing the facts in the light most favorable to Gosey, she has not presented sufficient evidence upon which a reasonable jury could conclude

- 20 -

that she had the five to seven years managerial experience necessary for the position. The successful applicant, Muske, had 19 years of progressively responsible managerial experience. Gosey has not established the second or fourth elements of a *prima facie* case.

Moreover, even if Gosey had established a *prima facie* case, Aurora has presented evidence that it chose Muske because she had superior qualifications for the managerial position. "[E]vidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Fischer*, 519 F.3d at 404 (citations omitted). Gosey's subjective belief that she was better qualified than Muske does not, without more, demonstrate pretext. *See Johnson,* 260 F.3d at 733.

Gosey has not rebutted that showing by demonstrating that Muske's qualifications were not the real reason that she was hired. It is well established that an employer is free to develop its own criteria in determining whom to select for a position, and Gosey has failed to demonstrate that the reasons Aurora has articulated for selecting Muske were not its "true rationales." *Id*. Therefore, Gosey's failure to promote claim will be dismissed.

### Harassment, Abuse and Mistreatment

Aurora also seeks dismissal of Gosey's claims of harassment, abuse and mistreatment because she has not adequately plead her claim. It cites *McReynolds v.*

- 21 -

*Merrill Lynch & Co.,* 694 F.3d 873, 885 (7th Cir. 2012).

*McReynolds*, a race discrimination action filed by brokers against their employer brokerage house and its owner challenging the incentive-retention system, is distinguishable from the instant case. *Id.* at 876-77. The court of appeals considered an appeal from the Rule 12(b)(6) dismissal of the Complaint for failure to adequately plead intent to discriminate under 42 U.S.C. § 2000e-2(h), which was critical to the cause of action. *Id.* If the complaint did not expressly plead intent, the production-based incentive system was protected. The court held that the conclusory allegations of intent were insufficient. *Id*. at 884-87. Gosey's Complaint presents standard employment discrimination claims that do not present analogous issues regarding the pleading of intent.

Gosey alleges that she was harassed, abused, and mistreated as to the terms and conditions of her employment by Seebacher and Franckowiak, with the knowledge and approval of Aurora as to the abuse and harassment. She also alleges that the abusive and discriminatory conduct culminated in the October 19, 2010, termination of her employment. While Gosey's allegations of discrimination are rather bare-bones, the Complaint adequately alleges Gosey's second cause of action.

In her opposition brief, Gosey asserts that she was demoted by Aurora because she was given cook's duties in addition to her chef's assistant duties; she was given managerial duties not in her job description; Seebacher verbally abused her; and Muske altered her time records.

- 22 -

Gosey also states that Muske made mistakes when she altered Gosey's time records. She contends that, because of Muske's mistakes neither the July 20, 2010, nor the August 17, 2010, tardy were correct and, as a result, she should not have been issued Step 2 or Step 3 Warnings or been discharged. Gosey states that the mistakes made by Muske (and Seebacher in March 2010) were moronic or the result of bias against her based on her race.

Not all the actions that Gosey complains of were unlawful under Title VII. Not all differences in job responsibilities or job related actions are adverse employment actions — for example, the denial of requests to change shifts is not unlawful because schedule assignments generally are not adverse employment actions. *See Porter v. City of Chicago*, 700 F.3d 944, 954-55 (7th Cir. 2012). Additionally, written reprimands, like Seebacher's, without any material alterations of the terms and conditions of employment are not adverse employment actions. *See id.*

Moreover, to the extent that Aurora treated Gosey differently than Sandoval, Gosey offers no evidence that the difference in treatment was racially motivated; the evidence before the Court establishes that Seebacher's directives that she prepare prep sheets was based on the needs of the prep cook and Aurora, not race. Additionally, Gosey has not offered any evidence that Seebacher made requests of her for any other reason than his attempt to improve the food services department. *See Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1002 (7th Cir. 2000).

Beyond those observations, the Court notes that Gosey's theory of

- 23 -

mistreatment does not clearly fall within the direct or indirect method of proof for discrimination claims. However, under either method the "central question at issue is whether the employer acted on account of the plaintiff's race (or sex, disability, age, etc.)." *Morgan v. SVT, LCC,* 724 F.3d 990, 997 (7th Cir. 2013). In order to succeed in a Title VII lawsuit, a plaintiff must show that she is a member of a class protected by the statute, that she has been the subject of some form of adverse employment action (or that she has been subjected to a hostile work environment), and that the employer took this adverse action on account of the plaintiff's membership in the protected class. *See Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring).

Examining Gosey's claim that she was harassed, mistreated and abused by Seebacher and Muske under the direct method of proof, the Court notes that Gosey has not identified any evidence directly linking Seebacher or Muske's conduct with her race. With respect to Seebacher, Gosey asserts that he treated her differently than chef's assistant Sandoval. However, Sandoval was on the second shift and Aurora did not employ a second shift prep cook. Consequently, Sandoval was not required to prepare prep sheets.

With respect to the other duties Seebacher imposed on Gosey, there is no evidence that Seebacher imposed different requirements on other chef's assistants he supervised or that he treated her differently than other similarly situated employees who did not comply with his directives. With respect to Muske, Gosey has not presented any evidence that Muske treated her time records or tardiness any differently

- 24 -

than those of the similarly situated employees under her supervision.

Under the indirect method, Gosey would need to initially show that: (1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). If the plaintiff has evidence that can meet those four criteria, the burden shifts to the employer to offer a non-discriminatory reason for the adverse employment action. *Id.* If the employer does so, the burden shifts back to the plaintiff to present evidence that, if believed by the trier of fact, would show that the real explanation for the action is discrimination. *Id.*

Again Gosey flounders on the second and fourth elements of her case with respect to Seebacher. She did not comply with Seebacher's directives, and there is no evidence that Seebacher treated a similarly situated employee differently. With respect to Muske, construing the evidence in the light most favorable to Gosey, the Court accepts that Gosey was not tardy on July 20, and August 17, 2010. However, Gosey does not contest the fact that she was late on July 25, and 27, 2010, as well as on October 11, and 15, 2010. Gosey has also not presented any evidence regarding an Aurora employee supervised by Muske whose employment was continued despite a similar record of tardiness and having progressed through the four-step disciplinary process, without improvement.

Moreover, Gosey has not presented any evidence rebutting Aurora's legitimate

- 25 -

non-discriminatory reason for terminating her employment due repeated violations of Aurora's tardiness policy. The question is not whether Aurora's stated reason was inaccurate or unfair, but whether Aurora honestly believed the reason it has offered to explain the discharge. *See e.g., Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 397 (7th Cir. 2010). "[I]t is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 601 (7th Cir. 2010) (quoting *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir.2005)).

Thus, despite construing the evidence and the reasonable inferences from that evidence in the light most favorable to Gosey, she has not presented sufficient evidence under the indirect method of proof to withstand summary judgment on her adverse treatment claim.

### Retaliation

Gosey also asserts that she was discharged in retaliation for filing her administrative discrimination complaints. A plaintiff may prove retaliation using either direct or indirect proof. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006). Under the direct method, Gosey's claim survives summary judgment if she presents evidence that she engaged in an activity protected under the applicable statute, she suffered an adverse employment action and there is a causal connection between the two. *See Dorsey v. Morgan Stanley,* 507 F.3d 624, 627 (7th

- 26 -

Cir. 2007); *Stone v. City of Indianapolis Pub. Utils. Div.,* 281 F.3d 640, 644 (7th Cir. 2002). Under the direct method, Gosey provides no evidence that Muske knew about her discrimination charge, so it could not have affected the decision to discharge her. *See Tomanovich,* 457 F.3d at 668–69 (affirming summary judgment on applicant's retaliation claim when applicant failed to show that potential employer knew he had filed a Title VII complaint).

Moreover, the tardiness problem was raised by Muske nearly a month before Gosey filed her discrimination complaint. Gosey received an attendance reminder notice on July 7, 2010, and received her step one written warning on July 26, 2010. While Gosey received two additional written warnings, she has not presented any evidence that there was a causal connection between her filing of the complaints and her subsequent discharge. *See Harper v. C.R. England*, 687 F.3d 297, 307 (7th Cir. 2012).

Under the indirect method of proof, Gosey may establish a *prima facie* case of retaliation by showing that: (1) she engaged in a statutorily protected activity; (2) she met her employer's legitimate expectations; i.e., she was performing her job satisfactorily; (3) she suffered a materially adverse action; and (4) she was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity. *See Tomanovich,* 457 F.3d at 663. Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a non-discriminatory reason for discharging the plaintiff. *Id.* If the defendant meets its burden, the burden

- 27 -

shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the defendant's proffered reason was pretextual. *Id.*

As asserted by Aurora, Gosey was not performing according to its legitimate expectations that she be present when her shift began. Between April 11, and June 18, 2010, Gosey was late 14 times. She was given written notice that her tardiness was problematic and, if it continued, would result in warnings and her possible discharge. She received three written warnings, each of increasing severity. Muske also gave Gosey tips to remedy her tardiness. Gosey was late two additional times in October, and after the second tardy was notified that her employment with Aurora was terminated. Moreover, Gosey has not identified any other employee supervised by Muske who was treated more favorably. Thus, Gosey has not established a *prima facie* retaliation case under the indirect method of proof.

Even if Gosey had made such a case, Aurora has a legitimate non-discriminatory reason for discharging her — she violated its attendance policies. Gosey has not presented evidence casting doubt on the reason Aurora terminated her employment. *Montgomery*, 626 F.3d at 397.

None of the evidence suggests that Aurora did not believe that Gosey had gone through the progressive discipline process and that the multiple warnings under its discipline system warranted her discharge. Based on the foregoing, Aurora's summary judgment motion is granted and this action is dismissed.

- 28 -

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Gosey's motion to supplement her brief (ECF No. 52) is **DENIED**;

Aurora's motion for summary judgment (ECF No. 27) is **GRANTED**; and

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of September, 2013.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 29 -