UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TINA C. GOSEY,

        Plaintiff,

v.

AURORA MEDICAL CENTER,

        Defendant.

Case No. 11-cv-805-pp

---

**DECISION AND ORDER DENYING DEFENDANT'S
SECOND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 81)**

---

      Tina Gosey filed a complaint alleging that Aurora Medical Center harassed, refused to promote, and fired her because she is African-American, and that Aurora's decision to fire her was in retaliation for her complaints of discrimination. Gosey pleaded claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(A)(1), 2000e-3(a). Earlier in this litigation, when the case was assigned to Judge Randa, Aurora moved for and was granted summary judgment as to all of Gosey's claims. Dkt. No. 55. Gosey appealed. The Seventh Circuit affirmed in part and vacated in part, remanding the case to Judge Randa for further proceedings on Gosey's claims of discriminatory and retaliatory discharge. Gosey v. Aurora Med. Ctr., 749 F.3d 603 (7th Cir. 2014). After remand, Aurora moved for leave to file a second summary judgment motion, arguing that the Seventh Circuit had erred in analyzing parts of the factual record relating to whether Aurora's tardiness policy is subject to

1

an informal "grace period" and whether Gosey arrived to work late on certain days. Dkt. No. 73. Judge Randa granted the motion. Dkt No. 79. During the briefing schedule on that motion, the case was re-assigned to Judge Pepper.

Having reviewed the record, including the Seventh Circuit's decision vacating the district court's grant of summary judgment on Gosey's discriminatory and retaliatory discharge claims, the court concludes that it must deny Aurora's second motion for summary judgment. Genuine disputes of material fact remain about whether a grace period existed while Gosey worked for Aurora, and, if so, whether Aurora's explanation that Gosey was fired for chronic tardiness was pretextual. Those disputes should be resolved by means of a trial.

**I.   BACKGROUND**

Judge Randa thoroughly chronicled the relevant facts in his decision and order granting Aurora's first motion for summary judgment. Dkt. No. 55, 5-16. Because the parties are well-versed in the facts of the case, the court will briefly summarize the material facts that are undisputed, and the disputed material facts that control the court's decision on Aurora's second motion for summary judgment.

Aurora hired Gosey in 2008, and she worked as a Chef Assistant. Dkt. No. 29-8, at 2; Dkt. No. 30, ¶2. In September 2009, she applied for the open position of Manager Food & Nutrition Services. Dkt. No. 29, at ¶5. More than 150 people applied for the position. Dkt. No. 30, ¶5. Aurora interviewed Gosey, but ultimately hired a white woman, Margaret Muske. Gosey, 749 F.3d at 604.

Muske became Gosey's supervisor on March 22, 2010, the date Muske was hired. Dkt. No. 29, ¶¶8-9. In August 2010, Gosey filed a charge of discrimination with the Equal Employment Opportunity Commission and the Wisconsin Department of Workforce Development. Id., ¶24. She alleged that Aurora had denied her the promotion and subjected her to discipline based on her race. Id. In addition, she accused Aurora's managers of trying to manufacture an excuse to fire her by altering her attendance records so that it would appear that she was tardy. Id. Two months later, Aurora fired Gosey. Id., ¶23.

The parties disagree about whether Gosey actually was late to work on enough occasions to justify her termination for excessive tardiness. Aurora asserts that Gosey was not meeting its legitimate expectations that she arrive at or before the beginning of her scheduled shift, as Aurora alleges its tardiness policy required. Dkt. No. 83, ¶¶10-11, 40. According to Aurora, Gosey was late fourteen times between April 11, 2010 and June 18, 2010. Id., ¶46. Aurora maintains that after it notified Gosey that continued tardiness would result in warnings and her possible discharge, she continued to arrive late in violation of the tardiness policy, which resulted in her termination. Id., ¶¶48-54.

Gosey argues that she was not actually tardy on every occasion Aurora used to justify her termination, because Aurora had an informal practice or policy allowing a "grace period" after the start of a shift during which an employee would not be considered tardy. E.g., Dkt. No. 87, at 1-3. Aurora's former Chief Clinical Services Officer, Debra Franckowiak, testified in her

3

deposition that such a grace period existed. Dkt. No. 42-18, at 3-4. According to Gosey, Aurora decided not to give her the benefit of the grace period on certain occasions in order to generate a legitimate basis for terminating her—chronic tardiness. Dkt. No. 87, at 3-4, 6-8. Further, Gosey submits that Aurora's business records show that its employees had been altering Gosey's time records to make it seem that she arrived late—and outside the grace period—when she did not. The Seventh Circuit decided that a genuine dispute existed concerning whether Aurora allowed a grace period, along with whether Gosey's time records were accurate. Gosey, 749 F.3d at 608.

Aurora disagrees with the Seventh Circuit's conclusions. Aurora argues that the factual statements contained in the declarations and testimony of its employees (including Muske and Franckowiak, as well as its Human Resources Director and five food services department employees) constitutes "indisputable evidence" that "there was *no* seven minute grace period in the Food Services Department where Ms. Gosey worked." Dkt. No. 82, at 3. Aurora argues further that Gosey's time records were not altered, that the records accurately reflect that she was tardy on each date that Aurora considered her to have been tardy, and that Gosey's chronic tardiness is a legitimate non-discriminatory basis for Aurora's decision to fire her. Id., at 6, 17. For these reasons, Aurora argues that it is entitled to summary judgment. Gosey maintains that genuine disputes remain as to these issues, and urges the court to deny the motion.

4

## II. ANALYSIS

A. <u>Applicable Standards</u>

*1. The Mandate Rule and the Law of the Case Doctrine*

The parties do not address how the Seventh Circuit's prior decision controls further proceedings in this court, but the court must adhere to its reviewing court's mandate on remand. The "mandate rule . . . requires a lower court to adhere to the commands of a higher court on remand." <u>Kovacs v. United States</u>, 739 F.3d 1020, 2014 (7th Cir. 2014) (citing <u>United States v. Polland</u>, 56 F.3d 776, 777 (7th Cir. 1995)). "The reach of the mandate is coextensive with the reach of [the appellate court's] holding . . . ." . <u>Moore v. Anderson</u>, 222 F.3d 280, 283 (7th Cir. 2000). "A court to which a case has been remanded may address only the issue or issues remanded, issues arising for the first time on remand, and issues that were timely raised but which remain undecided." <u>Kovacs</u>, 739 F.3d at 1024 (citing <u>United States v. Morris</u>, 259 F.3d 894, 898 (7th Cir. 2001). "The lower court is bound, through the mandate rule, to the resolution of any points that the higher court has addressed." <u>Id.</u>

"The law of the case doctrine is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances." <u>United States v. Adams</u>, 746 F.3d 734, 744 (7th Cir. 2014). On remand, the district court must conduct "'a careful reading of the reviewing court's opinion' to determine what issues were addressed." <u>Moore</u>, 222 F.3d at 283 (quoting <u>Creek</u>

5

v. Village of Westhaven, 144 F.3d 441, 445 (7th Cir. 1998)). "[O]bservations or commentary touching upon issues not formally before the reviewing court do not constitute binding determinations." Id.

This court confesses some bewilderment regarding Aurora's decision to file a second motion for summary judgment. The motion asks this court—the district court—to review, and reverse, the decision of the Seventh Circuit. This court does not have that authority; it is bound by the decisions of the Seventh Circuit, not the other way around. The court understands that Aurora disagrees with the Seventh Circuit's conclusions, but it had avenues for addressing that disagreement. It could have requested a panel re-hearing or re-hearing *en banc* with the Seventh Circuit. It could have petitioned the Supreme Court for certiorari. It chose instead to ask a lower court to reverse the ruling of its superior appellate court. This court cannot do what Aurora asks.

Because Aurora filed the motion, the court will address the issues that it raises. Given the Seventh Circuit's ruling, it is not particularly relevant, but this court agrees with the Seventh Circuit's conclusions.

*2. Summary Judgment*

A court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). A court appropriately grants summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

6

burden of proof at trial." Id. The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (internal quotation marks omitted) (citation omitted). "A party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 437 (7th Cir. 2000).

"Material facts" are those facts which "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). The party opposing summary judgment cannot simply rest on allegations or denials in its pleadings; it must also introduce affidavits or other evidence setting forth specific facts showing a genuine issue for trial. Anders v. Waste Mgm't of Wisconsin, 463 F.3d 670, 675 (7th Cir. 2006). The court views all facts and draws all reasonable inferences in favor of the nonmoving party, Tanner v. Jupiter Realty Corp., 433 F.3d 913, 915 (7th Cir. 2006), but "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion," Herzog v. Graphic Packaging Int'l, Inc., 742 F.3d 802, 806 (7th Cir. 2014) (quoting Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc., 517 F.3d 470, 473 (7th Cir. 2008)).

3.  *The District Court's Discretion to Enforce Its Local Rules*

"The Seventh Circuit has repeatedly affirmed that district courts may enforce their local rules strictly to promote the clarity of summary judgment

7

filings." Harris v. Billington, No. 12-cv-437, 2015 WL 1893240, at *1 (W.D. Wis. Apr. 24, 2015) (citing Stevo v. Frasor, 662 F.3d 880, 886–87 (7th Cir. 2011)). However, "the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." Stevo, 662 F.2d at 887 (quoting Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir. 1995)).

Both of the parties in this case "are guilty of procedural error [violations of this court's local rules], yet neither is fatal to the court's ability to parse the summary judgment materials." Harris, 2015 WL 1893240, at *1. For some reason, Gosey filed a response to Aurora's proposed findings of material fact in support of its first summary judgment motion, but didn't file them in response to the second motion. Gosey's proposed statement of material facts in opposition to Aurora's motion contains several general citations to her brief (see Dkt. No. 92, ¶¶ 1-2, 4-5), but not to affidavits, declarations, or other parts of the record that support the facts asserted. See L.R. 56(b)(1)(C)(i). Aurora filed its response to Gosey's proposed findings of material fact one day late and without requesting leave to do so.

Despite these procedural errors, the court is able to evaluate whether summary judgment is appropriate despite the parties' non-compliance with the rules. Accordingly, the court will ascertain the undisputed facts based on the proposed findings of fact (and responses) submitted with the parties' motions for summary judgment, and the citations to evidentiary materials contained in the parties' briefs. Harris, 2015 WL 1893240, at *1.

8

B.  Genuine Disputes of Material Fact Preclude Summary Judgment on Gosey's Claims of Discrimination and Retaliatory Discharge

To avoid summary judgment in this case, Gosey must "present evidence showing that her discharge was motivated by her race or was in retaliation for her administrative complaint." Gosey, 749 F.3d at 607. "A Title VII plaintiff can prove retaliation using either the direct or indirect method." Greengrass v. Int'l Monetary Sys., Ltd, 776 F.3d 481, 485 (7th Cir. 2015) (citing Majors v. Gen. Elec. Co., 714 F.3d 527, 537 (7th Cir.2013)). The direct method requires the plaintiff to prove "(1) that she engaged in statutorily protected activity; (2) that she was subjected to an adverse employment action; and (3) that there was a causal connection between the two. Id. The indirect method requires the plaintiff to prove (1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations at the time of the adverse action; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees not in the protected class more favorably. Moultrie v. Penn Aluminum Int'l, LLC, 766 F.3d 747, 752–53 (7th Cir. 2014) (citation omitted).

In this case, as the Seventh Circuit recognized, the parties agree that Gosey is proceeding under the indirect method. The Seventh Circuit explained that Gosey's claims of discriminatory and retaliatory discharge stand or fall together under the indirect method," and resolved those claims together in determining whether summary judgment was appropriate. Gosey, 749 F.3d at 608. This court will proceed the same way. If the court determines that Gosey established a *prima facie* case by presenting evidence satisfying the four elements of the indirect method, the burden shifts to Aurora to articulate a

9

legitimate nondiscriminatory reason for terminating Gosey. Id. at 753. If Aurora meets that burden, Gosey must show that Aurora's proffered reason is pretextual. Id.

Aurora does not dispute that Gosey is a member of a protected class or that she suffered an adverse employment action. Aurora maintains that Gosey was not meeting Aurora's legitimate expectations at the time she was fired and that it did not treat Gosey less favorably than Caucasians with regard to tardiness. Therefore, Aurora argues that Gosey cannot establish a *prima facie* case of discriminatory or retaliatory discharge because she cannot meet the second and fourth elements of the indirect method of proof.

In vacating the prior grant of summary judgment on Gosey's discrimination and retaliation claims, the Seventh Circuit stated:

> By introducing evidence that, if believed by the trier of fact, would show that she was complying with Aurora's attendance requirements, Gosey also satisfied her burden to present evidence that she was meeting Aurora's legitimate employment expectations, that she was similarly situated to all other employees who arrived on time but were not fired, and that Aurora's supposed reason for firing her is pretextual.

Gosey, 749 F.3d at 607. That court concluded that, if Gosey introduced evidence from which the trier of fact could find that Gosey was complying with Aurora's attendance requirements, she satisfied the remaining requirements to establish a *prima facie* case and to raise the inference of pretext. Id. The scope of the mandate controls the outcome of this motion; if a genuine dispute still exists about whether Gosey "was complying with Aurora's attendance

10

requirements," the court must deny the motion. Adams, 746 F.3d at 744; Moore, 222 F.3d at 283.

1. *There is a Genuine Dispute Whether Aurora's Written Tardiness Policy Is Subject to an Informal Grace Period Practice*

Aurora argues that the court must grant summary judgment in its favor "because there is indisputable evidence that Ms. Gosey was repeatedly late to work for her assigned shifts in violation of consistently applied attendance rules." Dkt. No. 82, at 1. But, even after a second round of summary judgment briefing, the meaning of the phrase "late to work" remains unclear, because a dispute remains regarding whether or not Aurora permitted a grace period.

Aurora's written tardiness policy states that an employee who clocks in past his or her scheduled start time—even by one minute—is considered tardy. Id., at 4. Aurora's position is that an employee is "late to work," and subject to discipline, whenever the employee clocks in one minute or more past his or her arrival time. Id., at 7. Aurora submits that "Gosey's failure to consistently arrive at work on time . . . landed her in progressive discipline, culminating in her discharge." Id., at 12.

A central piece of Gosey's case has been her claim that Aurora's food services department softened Aurora's written tardiness policy to include an informal unwritten grace period. Under the grace period (which has been described as a "policy" or "practice"), Gosey maintains that an employee can clock in up to seven minutes late without being deemed late to work. Gosey supports her contention with the deposition testimony of Debra Franckowiak, Aurora's former Chief Clinical Services Officer. Franckowiak testified that the

11

food services department followed a practice of granting employees an informal seven-minute grace period. Dkt. No. 42-18, at 3-4. Gosey maintains a dispute still exists about whether Aurora recognized an informal "grace period," under which Gosey would not have been late for work on certain occasions.

Aurora denies the grace period ever existed, and claims that the grace period's existence is based on a theory that has "been debunked." Dkt. No. 93, at 7. In support of its contention, Aurora cites its written tardiness policy and handbook, other deponents' testimony, and attempts to recast Franckowiak's testimony as relating to Aurora's "pay rounding practice," not its tardiness policy. Dkt. No. 82, at 7 n.3. Yet, as the Seventh Circuit recognized in its decision, Franckowiak *did* testify that the food services department recognized an informal grace period before an employee would be considered tardy upon arrival for a shift. Gosey, 749 F.3d at 608. According to Franckowiak, it was "[her] understanding that there was a grace period of, I want to say, seven minutes at the start of your shift." Dkt. No. 42-18, at 3. Franckowiak testified further that "if the grace period was seven minutes, late to me would be eight minutes." Id. Gosey continues to maintain that there was an informal grace period as well. Dkt. No. 42, at 7.

The Seventh Circuit expressly concluded that, even if Aurora disputed Franckowiak's testimony as to the grace period (as it now does), "the resolution of the disagreement would be for the trier of fact." Gosey, 749 F.3d at 608. In this second summary judgment motion, Aurora essentially asks the court to make credibility determinations, weigh the evidence, and conclude that Aurora

12

is right that there was no attendance grace period and Gosey is wrong. See Dkt. No. 82, at 7-8. But the court cannot weigh the evidence on summary judgment. Berry v. Chicago Transit Auth., 618 F.3d 688, 691 (7th Cir. 2010) ("It is not for courts at summary judgment to weigh evidence or determine the credibility of such testimony; we leave those tasks to factfinders.").

The Seventh Circuit's holding on this issue is controlling. Franckowiak's testimony and Gosey's declarations are evidence from which the trier of fact could decide in her favor that there was a practice of allowing an employee to arrive within seven minutes of his or her shift start time without facing discipline or corrective action. A genuine dispute exists about whether a grace period existed with respect to Aurora's attendance policy, and that is an issue a jury must resolve.

2. *There is a Genuine Dispute as to Whether Gosey's Time Records Accurately Reflect her Scheduled Start Times and Arrival Times.*

In his order granting summary judgment to Aurora, Judge Randa found that Gosey was tardy on fourteen occasions between April 11 and June 18, 2010. He further found that after Aurora began its formal disciplinary process, Gosey was tardy on July 25 and 27, 2010, and on October 11 and 15, 2010. Dkt. No. 55, at 13-14. On appeal, the Seventh Circuit concluded that Aurora's own evidence, viewed in the light most favorable to Gosey, shows that she was late at most one time." Gosey, 749 F.3d at 608.

On remand, Aurora argues that the Seventh Circuit simply misinterpreted Aurora's records, and wrongly concluded that Gosey was not late because it did not understand how the records are generated and the

13

meaning of some of the terms used in the records. Dkt. No. 82, at 14. In support of the instant motion, Aurora filed declarations that it contends conclusively establish Gosey's scheduled start times and actual arrival times, and demonstrate that Gosey's time records were not altered. Id. at 5-6. Aurora argues that the declarations prove the "indisputable fact" that Gosey was late to work on multiple dates, as Judge Randa previously found. Id. at 6, 14.

In opposing Aurora's first motion for summary judgment and the current motion, Gosey relied on her own declarations, in which she stated that she was not late on certain of the dates Aurora claimed she was, and that her actual scheduled start times were different than Aurora's records reflect. Dkt. Nos. 42, 88. Aurora replies that Gosey has no personal knowledge supporting her "statements regarding Aurora's electronic time and attendance records." Dkt. No. 82, at 13. But the court finds that Gosey's sworn statements about her recollection of her own scheduled start times, and whether she was late on certain days, constitute evidence that the court cannot disregard on summary judgment. Berry, 618 F.3d at 691.

The *trier of fact* might conclude that Aurora's business records are a more convincing basis on which to determine what Gosey's scheduled start times and arrival times were, rather than Gosey's personal recollection of what her schedule and arrival times. But the *court* cannot make that determination on summary judgment. "The purpose of inviting affidavits, as in a summary judgment proceeding, is to determine whether there is a dispute over a material issue of fact." Castillo v. United States, 34 F.3d 443, 445 (7th Cir. 1994). "[A]

14

determination of credibility cannot be made on the basis of an affidavit. That is, a judge cannot take two affidavits which swear to opposite things and say, 'I find one of the affidavits more credible than the other, and therefore I shall accept it as true.'" Id. In this case, the court finds that a genuine dispute exists over which days Gosey arrived to work after her scheduled start time.

3. *The Genuine Dispute as to the Grace Period and Gosey's Alleged Tardiness Preclude Summary Judgment.*

Aurora is correct that tardiness can be a legitimate, non-discriminatory reason for firing an employee. E.g., Lindemann v. Mobil Oil Corp., 141 F.3d 290, 296 (7th Cir. 1998) ("Absenteeism and tardiness have been recognized by this Court as legitimate, nondiscriminatory reasons for an employer to terminate an employee.") (citation omitted). The burden shifts back to Gosey to support her case with evidence raising at least a reasonable inference that Aurora's explanation for firing Gosey is a pretext. Carlson v. CSX Transp., Inc., 758 F.3d 819, 828 (7th Cir. 2014).

As discussed above, whether Aurora had an informal grace period before an employee was tardy and subject to corrective action is in dispute. Gosey has put forth evidence that Aurora's food services department used a grace period to excuse what could be described as *de minimis* tardiness. If there were a grace period, and Gosey did not arrive to work outside the grace period enough times to justify corrective action and her ultimate termination, then the trier of fact could conclude that she was meeting Aurora's legitimate employment expectations. Again, the Seventh Circuit held:

15

> By introducing evidence that, if believed by the trier of fact, would show that she was complying with Aurora's attendance requirements, Gosey also satisfied her burden to present evidence that she was meeting Aurora's legitimate employment expectations, that she was similarly situated to all other employees who arrived on time but were not fired, and that Aurora's supposed reason for firing her is pretextual.

Gosey, 749 F.3d at 607. The Seventh Circuit's holding appears to depend in part on its review of Gosey's attendance records and its conclusion that "she was late at most one time." See id., at 607-08. Aurora now contends that its evidence conclusively establishes that Gosey was tardy a sufficient number of times to justify her termination, and that its explanation for her termination is not pretextual. But even if Aurora is correct that its evidence shows that the Seventh Circuit erred in finding Gosey was late only on one day (an issue this court does not review), that would not end the case.

Gosey would not have been tardy on many of the days that Aurora claims that she was if a seven-minute grace period existed. According to Aurora's brief, Gosey arrived to work within seven minutes of her scheduled start time on seven occasions in 2010: May 17 (one minute); July 1 (two minutes), July 5 (five minutes), July 25 (one minute), July 27 (four minutes), October 11 (one minute), and October 15 (two minutes). Dkt. No. 82, at 6, 9-10. Gosey was fired for excessive tardiness on October 19, 2010, owing in part to her allegedly tardy arrivals on October 11 and October 15. Id., at 2, 10. But if Aurora's employees were allowed to arrive within seven minutes of their start time without being considered tardy, then she would not have been late on those dates. The trier of fact could find she was meeting Aurora's expectations, and

16

"that the company's explanation for firing Gosey was not simply mistaken, but false." Gosey, 749 F.3d at 608.

Aurora believes that its evidence should carry the day, but this is a question for the factfinder, not the court. The court is not to weigh the evidence on summary judgment, and "[w]hen the existence of a uniform policy or practice is in doubt, it cannot serve as a reason for discharging [an employee]." Gosey, 749 F.3d at 608 (quoting Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1040 (7th Cir. 1993)). As the Seventh Circuit explained in vacating summary judgment on Gosey's retaliation and discriminatory discharge claims, "[g]iven the genuine issues of material fact surrounding Gosey's time records and Aurora's attendance policy, the district court erred in concluding that the reason for Gosey's discharge is beyond dispute." Id. The Seventh Circuit's mandate encompasses its conclusions that Gosey's evidence establishes a *prima facie* case and gives rise to a reasonable inference of pretext. Accordingly, the court must deny summary judgment.

### III. CONCLUSION

The court concludes—as the Seventh Circuit already had done—that there are genuine disputes of material fact that preclude summary judgment on Gosey's claims of discriminatory and retaliatory discharge. Accordingly, the court **DENIES** Aurora's Second Motion for Summary Judgment (Dkt. No. 81).

Dated in Milwaukee this 10th day of July, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge